UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DECREETA GALLOWAY,

        Plaintiff,                       CIVIL ACTION NO.  04 CV 73301 DT

       v.                                  DISTRICT JUDGE LAWRENCE P. ZATKOFF

JO ANN B. BARNHARD,              MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

      This matter is before the court on cross motions for summary judgment in this action for judicial review of defendant's decision denying plaintiff's application for social security disability and supplemental security income benefits.  For the reasons discussed in this Report, it is recommended that the defendant's motion be granted, that of the plaintiff denied, and the decision denying benefits be affirmed.

      Plaintiff is a younger individual (age 39) with a high school education and past relevant work as a security guard, hospital housekeeper, direct care worker, and store clerk.  (Tr. 74, 82-86)  She alleged that she became disabled on May 10, 2001, as a result of an injury at work which caused her back and neck pain from  herniated discs in her upper and lower back.  (Tr. 73)  At the hearing before an administrative law judge, plaintiff and a vocational expert testified.  The ALJ found that plaintiff had "degenerative disc disease of the cervical and lumbar spines and

substance abuse."[1]  (Tr. 22)  The ALJ also found that plaintiff was unable to perform any of her past relevant work, but retained the residual functional capacity to perform a restricted range of light work, which jobs existed in significant numbers.  The ALJ restricted her to jobs which did not require any climbing of ladders or more than occasional bending at the waist or knees, occasional kneeling, occasional crawling, occasional stair climbing, and occasional overhead reaching.  (Tr. 22)  In addition, she was limited to work that did not involve any detailed instructions or extended periods of concentration, more than occasional interaction with supervisors, coworkers, or the public, or more than occasional independent decision-making or planning.  The expert considered these restrictions and opined that someone with such limitations could perform 8,825 unskilled jobs at the sedentary level with a sit/stand option.

The issue before the court is whether to affirm the Commissioner's determination.  In *Brainard v. Secretary of HHS*, 889 F.2d 679, 681 (6th Cir. 1989), the court held that:

> Judicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching her conclusion.  42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L. Ed. 2d 842 (1971).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L. Ed. 2d 126 (1938).  The scope of our

---

[1] The finding of substance abuse is not directly relevant here because plaintiff was found not disabled.  Disability benefits are not payable if a claimant is found disabled and drug or alcohol addiction is material to the finding.  42 U.S.C. § 423(d)(2)(c), § 1382c(a)(3)(J).  Only if plaintiff were found disabled and the substance abuse is a material part of the disability does the issue arise.  Thus, plaintiff's argument that the ALJ did not support his finding of substance abuse need not be considered.

> review is limited to an examination of the record only. We do not
> review the evidence *de novo*, make credibility determinations nor
> weigh the evidence. *Reynolds v. Secretary of Health and Human
> Services*, 707 F.2d 927 (5th Cir. 1983).

*Brainard*, 889 F.2d at 681.

  To establish a compensable disability under the Social Security Act, a claimant must demonstrate that he is unable to engage in any substantial gainful activity because he has a medically determinable physical or mental impairment that can be expected to result in death or has lasted, or can be expected to last, for at least 12 continuous months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a). If a claimant establishes that he cannot perform his past relevant work, the burden is on the Commissioner to establish that the claimant is not disabled by showing that the claimant has transferable skills which enable him to perform other work in the national economy. *Preslar v. Secretary of HHS*, 14 F.3d 1107 (6th Cir. 1994); *Kirk v. Secretary of HHS*, 667 F.2d 524, 529 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

  Upon judicial review, plaintiff raises two issues: (1) that the defendant erred as a matter of law in assessing plaintiff's credibility, and (2) that the defendant erred as a matter of law by improperly concluding that plaintiff retained the ability to perform a limited range of light work.

> *Issue One:* *That the defendant erred as a matter of law in assessing plaintiff's credibility.*

  Plaintiff claimed that she had constant and severe pain in her back, legs, feet and arms; numbness in her legs and feet, locking up of her right hand and legs, and depression. She stated that she was unable to extend her arms, push, pull or lift over ten pounds; stand more than ten minutes or sit more than twenty minutes, or climb stairs. She also stated that she was required to

sit in a recliner with a heating pad and with her feet elevated for four hours per day between 8 am and 5 pm. Plaintiff appears to take a fair amount of Vicodin and Ultram for her pain. (Tr. 214-219)

Plaintiff claims the ALJ did not properly evaluate her complaints of disabling pain. The ALJ found they were not credible. Pain caused by an impairment can be disabling, but each individual has a different tolerance of pain. *Houston v. Secretary of HHS*, 736 F.2d 365, 367 (6th Cir. 1984). Therefore, a determination of disability based on pain depends largely on the credibility of the plaintiff. *Houston*, 736 F.2d at 367; *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997); *Villarreal v. Secretary of HHS*, 818 F.2d 461, 463 (6th Cir. 1987). Because determinations of credibility are peculiarly within the province of the ALJ, those conclusions should not be discarded lightly. *Villarreal*, 818 F.2d at 463 and 464.

In *Duncan v. Secretary of HHS*, 801 F.2d 847 (6th Cir. 1986), this circuit modified its previous holdings that subjective complaints of pain may support a claim of disability. Subsequently, the Social Security Act was modified to incorporate the standard. 20 C.F.R. § 404.1529 (1995). A finding of disability cannot be based solely on subjective allegations of pain. There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. *Jones v. Secretary of HHS*, 945 F.2d 1365, 1369 (6th Cir. 1991). Here plaintiff's allegations are not consistent with the objective medical evidence. Plaintiff's own physician prescribed physical therapy in April and May of 2001. (Tr. 221-223) Although she

assessed her pain as a 10 on a scale of 1 to 10, she had a normal gait and intact reflexes. Her treating doctor noted that she had been uncooperative at examination and did not keep her appointment with the neurosurgeon. (Tr. 215) When eventually examined by the neurosurgeon, Dr. Douglas, she had normal reflexes, a normal gait, significant guarding behavior, and give-way weakness, which the doctor indicated was a sign of malingering. (Tr. 136) Although her MRI showed a small cervical bulge, she had no evidence of nerve root compression and findings of only a very mild degenerative, age appropriate, disk disease. Disc spaces were well preserved. (Tr. 136, 165-166)

Plaintiff was examined by Dr. Boike on September 5, 2001. (Tr. 137-138) Her mental status was normal but she again demonstrated "give-way" weakness in the upper and lower extremities but normal strength with perseverance. "Give-way weakness" is a non-physiologic examination finding characterized by a patient's muscle suddenly giving away when pressure is applied. It is associated with symptom magnification or malingering. See, Centeno, M.D. The Spine Dictionary, 104 (1999), note 3 of Defendant's Brief. Dr. Boike also reported a "peculiar" sensory examination, with severe vibratory loss diffusely, +2 symmetric reflexes, and flexion combined with a significant amount of guarding in the spine. Although plaintiff had widespread complaints, there were non-physiological sensory findings and apparent abnormal illness behavior. There was no clinical evidence of either a cervical radiculopathy or myelopathy. He recommended against narcotic analgesics. (Tr. 138)

However, the next day Dr. Moore placed plaintiff on sick leave for a month due to a diagnosis of herniated cervical disc, referred her to a pain clinic and later in the month prescribed

Tylenol #3 and Vicodin.  (Tr. 210-212)  He renewed the Tylenol #3 and Vicodin in December, 2001, and January, 2002.  (Tr. 205-7)  He continued these prescriptions as well as prescriptions for Ultram through March, 2002, and in April, 2002, gave her Tylenol #4 as well.  (Tr. 199)  He continued the prescriptive medication throughout 2002.  (Tr. 192-195)

Abuse of this medication was apparently observed by mental health professionals.  In November, 2001, plaintiff was evaluated by psychiatrist Gordon Forrer, M.D., who found that plaintiff was unable to state how much Vicodin she was taking, that she seemed to have taken quite a lot, staggered, and reported that she sat at home and did nothing.  She reported that her family had been "voodooed."  She was vague, nebulous, and preoccupied.  Plaintiff laughed irrationally, was hallucinatory and delusional.  He did not complete the exam because of her poor contact with reality and indicated that there was likely a "toxic condition with psychotic features."  (Tr. 144)  Despite her denials, he believed she had either been drinking or was intoxicated from Vicodin.  (Tr. 144)  In March, 2002, plaintiff underwent a consultive examination with Leonard Balunas, Ph.D.  (Tr. 155-160)  Again, she was lethargic, irritable, minimally cooperative, and repeatedly stated she wanted to go home.  She appeared psychotic but could not answer questions about her sleep or appetite, her mental health history, or her interests.  She was groggy, "out of it" and even fell asleep during the evaluation.  Here, plaintiff's behavior at examination and the absence of objective evidence of an impairment likely to produce the pain level alleged makes it reasonable for the ALJ to conclude that plaintiff's claims were not fully credible.

> *Issue Two:   That the defendant erred as a matter of law by improperly concluding that plaintiff retained the ability to perform a limited range of light work.*

Plaintiff alleges that the Commissioner has failed to carry her burden of proof in showing that other work existed in significant numbers because the ALJ's finding, which was based on the hypothetical that did not accurately depict all of plaintiff's limitations, is not supported by substantial evidence.

Where an ALJ poses a hypothetical question to a vocational expert (VE) that fully and accurately incorporates a claimant's physical and mental limitations, the expert's testimony in response thereto constitutes a substantial evidence to support a finding that the claimant is capable of performing a significant number of jobs in the national or regional economy, and thus is not disabled. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Conversely, where the hypothetical does not paint an accurate picture of the claimant's limitations, the expert's testimony cannot support such a finding. Plaintiff claims that the hypothetical asked of VE included different RFC limitations than those found in the ALJ's ultimate finding as it limited the individual to, among other things, "only sedentary work that provided the option to sit or stand, at will." (Tr. 294-295)

The court does not agree with plaintiff's characterization of the ALJ's findings regarding plaintiff's disability. With regard to the issue of plaintiff's impairments, the ALJ found that plaintiff was unable to perform any of her past relevant work. (Tr. 26) Nevertheless, the ALJ found that plaintiff retained "the residual functional capacity [RFC] to perform light work as defined in 20 C.F.R. § 404.1567 and § 416. 967 that involves only occasional bending at the waist or knees, occasional kneeling, occasional crawling, occasional stair climbing, occasional overhead

reaching, no climbing ladders, no detailed instructions, no extended periods of concentration, only occasional interaction with supervisors, co-workers, or the public, and occasional independent decision-making or planning." *Id.* Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(B).

The hypothetical question the ALJ asked of the VE, which limited the individual to only sedentary work that provided the option to sit or stand, was actually more limiting than the ultimate RFC finding made by ALJ and, thus, resulted in fewer jobs which plaintiff could perform. A claimant who can perform light work is regarded as also being able to perform sedentary work. 20 C.F.R. §§ 404.1567(b), 416.967(b). Therefore, the hypothetical question did not prejudice plaintiff in any way. For the hypothetical question to be considered prejudicial, the situation would have had to be reversed where the question asked of the VE was limited to light work and the ultimate RFC findings made by ALJ were limited to sedentary work. Even plaintiff concedes to the fact that the question asked of VE is not reversible error. (Plaintiff's Brief at 14)

Having established that the hypothetical question accurately incorporates plaintiff's physical and mental limitations, the court affirms the ALJ's finding and concludes that there is nothing in the record to suggest that plaintiff is incapable of performing light work. On May 11, and May 22, 2001, pursuant to plaintiff's physician, Dr. Moore, plaintiff underwent physical

therapist intake evaluation. (Tr. 123) During the evaluation, Plaintiff demonstrated intact reflexes, even though she complained of her pain being ten on a scale of one to ten. (Tr. 130, 127) In a letter dated August 13, 2001, to Julian Moore, M.D., neurosurgeon Clifford Douglas, M.D., noted that plaintiff has give-way reflexes of the upper and lower extremities and a normal gait. (Tr. 136) Dr. Douglas further noted, "[t]here is no reflexopathy on today's examination." Plaintiff's sensory examination results were non-dermatomal.[2] The Hoffmann's and Babinski signs were absent. Furthermore, Dr. Douglas noted in the letter that he reviewed an MRI dated April 29, 2001, which revealed a small C6-C7 broad based disk bulge, but no evidence for nerve root compression or for disk herniation. There was only a very mild degenerative disk disease, which, according to Dr. Douglas, "may be age appropriate at L4-L5 and L5-S1 with preserved disk space height." Moreover, Dr. Douglas noted that he could not recommend surgical intervention because he saw no surgical lesions on the MRI. *Id*.

In a letter dated September 5, 2001 to C. Douglas, M.D., Ph.D., neurologist Wilbur J. Boike, M.D., noted that plaintiff's mental status was normal. (Tr. 137) Plaintiff demonstrated "give-way" weakness in the upper and lower extremities. Her strength was normal, with perseverance. Joint position sense was normal in all extremities. Her reflexes were "2+ and symmetric[3] at the biceps, triceps, brachioradialis, knees, and ankles" *Id*. Plaintiff demonstrated a

---

[2] Dermatomes are the anatomical pathways of spinal nerves. See note 4 of Defendant's Brief.
[3] On medical reports reflexes are graded from 0 to 4. Zero (0) means no reflex, one (1) means a distinctly hypoactive and abnormal reflex, two (2) and three (3) mean a normal reflex, with three being more brisk than two, and four (4) means a distinctly hyperactive and abnormal reflex. Plus (+) or minus (-) signs are added for emphasis. See David A. Morton III, M.D., Social Security Disability Medical Text Handbook § 11.9 (Fine Books CD-ROM, 1st ed. Oct. 2001); note 5 in Defendant's Brief.

very significant amount of guarding behavior. (Tr. 138) Dr. Boike did not believe that plaintiff was a surgical candidate. He found no clinical evidence of either a cervical radiculopathy or a cervical myelopathy. He noted that plaintiff "may improve with a highly disciplined and structure spinal rehabilitation program emphasizing progressive exercise, with a focus on paraspinal stretching and strengthening." *Id*. Additionally, Dr. Boike suggested that plaintiff not be on narcotic analgesics. *Id*.

On December 17, 2001, after reviewing plaintiff's record, a state agency medical consultant conducted a "Physical Residual Functional Capacity Assessment" for work-related activities. (Tr. 145-52) The medical consultant concluded that plaintiff could frequently climb ramps and stairs, but could never climb ladders, ropes, and scaffolds. (Tr. 147) Plaintiff could occasionally kneel, stoop, crouch, and craw. *Id*. The medical consultant found no manipulative, visual, communicative, or environmental limitations. (Tr. 148-9) Additionally, the medical consultant noted, "there is no objective medical [evidence] that support [Plaintiff's] level of pain described." (Tr. 150)

On April 29, 2002, after reviewing plaintiff's record, a state agency psychiatrist, Sydney Joseph, M.D., conducted a "Mental Residual Functional Capacity Assessment" for work-related activities. (Tr. 167-87) Dr. Joseph found plaintiff's "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" not significantly limited. (Tr. 170) She further found plaintiff's "ability to complete a normal workday and workweek without interruptions … and to perform at a constant pace without an

unreasonable number and length of rest period" moderately limited. (Tr. 171) In addition Dr. Joseph concluded plaintiff was able to perform simple, unskilled work. (Tr. 172)

Accordingly, the expert's testimony in response to the limited question posed by ALJ constitutes substantial evidence to support a finding that plaintiff is capable of performing a significant number of jobs in the regional economy, and thus is not disabled. Therefore, the Commissioner has carried her burden of proof in showing that other work existed in significant numbers.

**Conclusion**

For the reasons stated above, the court recommends that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the decision denying benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                               s/Virginia M. Morgan
                               VIRGINIA M. MORGAN
                               UNITED STATES MAGISTRATE JUDGE

Dated:   June 17, 2005

---

**Proof of Service**

The undersigned certifies that a copy of the foregoing report and recommendation was served on the attorneys of record by electronic means or U.S. Mail on June 17, 2005.

                         s/Jennifer Hernandez
                         Case Manager to
                         Magistrate Judge Morgan